TENNESSEE DEPARTMENT OF HU-
MAN SERVICES, Assignee of Eartha
B. Farris, Plaintiff-Appellant,

v.

Farris JONES, Jr., Defendant-Appellee.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Nov. 12, 1982.

Rehearing Denied Nov. 30, 1982.

Application for Permission to Appeal
Denied by Supreme Court
March 14, 1983.

Harold W. Horne, Memphis, Susan Short-Kelly, Nashville, for plaintiff-appellant.

Leon Halski, Memphis, for defendant-appellee.

HIGHERS, Judge.

This is a paternity case in which the question for determination is whether the trial court was correct in dismissing the matter with prejudice for failure of the plaintiff to produce the child for blood testing within the State of Tennessee pursuant to court order.

The case was commenced when the Tennessee Department of Human Services, Assignee of Eartha B. Farris, filed a petition to establish paternity on April 2, 1979, in the Juvenile Court of Memphis and Shelby County. By order of March 27, 1979, the case was transferred to the Circuit Court for a jury trial. The order of transfer also contained the following language: "That the mother, the child, and the defendant shall submit to blood grouping test."

The defendant filed his answer in the Circuit Court on April 21, 1981, in which he denied that he had ever had sexual relations with the mother of the child. On July 28, 1981, he filed a motion in the Circuit Court to compel the plaintiff to submit the child for a blood test in Memphis. After a hearing on the motion, the trial court entered an

order on October 12, 1981, requiring the plaintiff to submit the child in Memphis for a blood test, allowing twenty days from the date of the order.

On February 1, 1982, the defendant filed a motion for involuntary dismissal on the basis that the plaintiff had not complied with the original order of March 27, 1979, or with the Circuit Court order of October 12, 1981. Defendant cited in his motion a letter from plaintiff's counsel in which it was stated that the child was living with an aunt in Chicago on a permanent basis and that there were no plans for her to return to Memphis. The motion was heard and granted by the court due to the failure and refusal of the plaintiff to produce the child as ordered.

The plaintiff moved to set aside the order of dismissal. Two affidavits were filed in support of the motion by laboratory personnel to the effect that blood could be drawn from the child in Chicago, that the sample could be shipped to Memphis under controlled conditions, and that the tests could be completed in Memphis. No other statements appear in the record regarding the failure of the plaintiff to produce the child for testing in Memphis as ordered by the court.

■ T.C.A. 24–7–112 provides, in part:

"In any civil or criminal action or proceeding in any court in which the question of the paternity of a child is involved, the court before whom the matter is pending, upon motion of the person charged with being the father of the child, shall order that the alleged father, the mother and the child submit to such blood grouping tests as may be necessary ... Such tests shall be made by qualified persons in laboratories located in this state, designated by the judge of the court in which such proceeding is pending."

The trial judge is vested with wide latitude in setting up procedures to guarantee that blood testing will be conducted fairly, properly and in the absence of any occasion for fraud. He is empowered by the statute to designate the "qualified persons in laboratories located in this state" who shall perform the tests. Extracting the blood from the mother, the child, and the alleged father is itself an integral part of the testing process. In *Nicks v. Nicks*, 51 Tenn.App. 520, 369 S.W.2d 909, at 914 (Tenn.App.1962), the Court stated:

"It is to be observed that such tests to be made by qualified persons in laboratories located in this state are admissible in evidence. This is not to say that such tests shall be received without an opportunity afforded the parties involved to examine the witness who made the tests as to his competency and as to the means employed by him, and *all other factors* having to do with the reliability of such tests." (Emphasis supplied.)

■ We cannot say that the trial judge abused his discretion in ordering that the child be submitted for testing in Memphis when the plaintiff chose the forum, the child was born February 18, 1973, and the case was not filed until April 2, 1979. In the passing of time, witnesses become unavailable, memory grows cold, and testimony which necessarily involves dates, times and places becomes difficult. Under these circumstances blood grouping tests are particularly crucial to the defendant in a paternity action. One has every right to expect, and the trial judge most certainly can act within his discretion to assure, that these tests will be performed in the most satisfactory manner available to the parties.

The trial court entered an order of dismissal pursuant to Rule 41.02, TRCP, which provides: "For failure of the plaintiff to prosecute or to comply with these rules of any order of court, a defendant may move for dismissal of an action or of any claim against him ... Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this Rule 41 [with certain exceptions not relevant here]

... operates as an adjudication upon the merits." In *Holt v. Webster*, 638 S.W.2d 391, at 394 (Tenn.App.1982), the Court said: "That the trial court is expressly authorized to impose the sanction of dismissal is without question. When the trial court exercises its discretion in imposing the sanction of dismissal, the exercise of its discretion will not be disturbed by this Court in the absence of an affirmative showing that the trial judge abused his discretion. *Hemmer v. Tennessee Electric Power Co.*, 24 Tenn. App. 42, 139 S.W.2d 698 (1940)."

In the instant case the plaintiff did not comply with the Juvenile Court order of March 27, 1979, or with the Circuit Court order of October 12, 1981. There was ample opportunity for the plaintiff to comply prior to the order of dismissal by the court on March 15, 1982. The record is silent regarding any just cause or reason for the non-compliance of the plaintiff.

We find no evidence in the record of abuse of discretion. The dismissal by the trial court is affirmed, and costs are assessed against the plaintiff.

NEARN, P.J., and CRAWFORD, J., concur.